BEATRICE McMICHAEL, Special Adm'r of the Estate of Brittany Bianca McMichael, Deceased, Plaintiff-Appellee, v. MICHAEL REESE HEALTH PLAN FOUNDATION, Defendant-Appellant (West Suburban Hospital Medical Center *et al.*, Defendants).

First District (5th Division)   No. 1—92—3898

Opinion filed March 11, 1994.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, Diane I. Jennings, Patricia Barker, and Kathryn C. Wyatt, of counsel), for appellant.

Sheldon Hodes, of Chicago (Leonard D. Litwin, of counsel), for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant, Michael Reese Health Plan Foundation (MRHP), was named as a party defendant in a medical negligence action brought by plaintiff, Beatrice McMichael (McMichael), as administrator of the estate of Brittany McMichael, deceased. MRHP moved to dismiss the complaint against it on the grounds that it was immune from liability in medical negligence actions pursuant to section 26 of the Voluntary Health Services Plans Act (hereafter VHSPA or the Act) (see Ill. Rev. Stat. 1987, ch. 32, par. 620). MRHP contended that the 1988 amendment to section 26 of the Act, which revokes the immunity previously granted to all VHSPA corporations except one (Union Health Services), is unconstitutional because it constitutes special legislation.

The trial court denied MRHP's motion to dismiss, but upon MRHP's request, certified the following question for interlocutory appeal:

"Whether the 1988 amendment to § 620 [sic] of the Voluntary Health Services Plans Act (VHSPA), purporting to eliminate the existing statutory immunity for all voluntary health service plans except those incorporated prior to January 1, 1965, and not owned or controlled by a hospital, is unconstitutional under the prohibition against special legislation in the 1970 Illinois Constitution (Ill. Const. (1970), art. IV, Sec. 13) and the guarantees of due process and equal protection of the law set forth in the Illinois and U.S. Constitutions (Ill. Const. (1970), art. I, Sec. 2; U.S. Const. Amendment 5, Amendment 14)."

As required by supreme court rule, the trial court found that there were substantial grounds for a difference of opinion and that resolution of the matter would materially advance the litigation. This court then granted MRHP leave to appeal on December 22, 1992, pursuant to Supreme Court Rule 308. (134 Ill. 2d R. 308.) We now dismiss the appeal as improvidently granted.

Before addressing the dismissal of this appeal, we shall first discuss a jurisdictional challenge raised by plaintiff. Plaintiff McMichael alleges, for the first time on appeal, that both the trial court and this reviewing court lack jurisdiction to consider the constitutionality of the 1988 amendment to the VHSPA for two reasons: (1) because, allegedly, MRHP failed to notify the Attorney General, pursuant to Supreme Court Rule 19 (134 Ill. 2d R. 19), that it was attacking the constitutionality of a statute affecting the public interest, and (2) because MRHP did not join, as parties to the action, all other health plans incorporated under the VHSPA.

■ We find that these arguments have no merit for several reasons. First of all, McMichael never raised these issues until she included them in her appellate brief. McMichael never filed a motion to compel compliance with Supreme Court Rule 19 in this or any other court, nor did she object to MRHP's motion to dismiss on the grounds that notification to the Attorney General was required. In addition, McMichael never objected to MRHP's motion to dismiss, claiming that other VHSPA corporations were necessary parties to the litigation. These omissions are grounds for the application of waiver. *In re Custody of D.A.* (1990), 201 Ill. App. 3d 810, 558 N.E.2d 1355.

In addition, McMichael's appellate brief is totally devoid of any authority or argument in support of her contention that failure to comply with Supreme Court Rule 19 is jurisdictional. Nor does she provide this court with any case law or argument in support of her allegation that other VHSPA corporations are necessary and indispensable parties. Furthermore, McMichael does not even attempt to distinguish authority which rejected a claim that a constitutional challenge was waived and not reviewable due to a failure to notify the Attorney General. (See *In re Custody of D.A.*, 201 Ill. App. 3d 810, 558 N.E.2d 1355.) Consequently, we deem both these issues to be waived and not properly before this court. See *Faulkner-King v. Department of Human Rights* (1992), 225 Ill. App. 3d 784, 587 N.E.2d 599 (mere contentions without providing citations to authority or argument do not merit consideration on appeal).

Despite our finding of waiver of these issues, we note that jurisdiction is vested in this court pursuant to Supreme Court Rule 308 and there is no basis for finding that a party's failure to comply with Supreme Court Rule 19 divests this court of jurisdiction to consider an appeal. According to the committee comments following the rule, Rule 19 was adopted effective August 1, 1986, as a parallel to Federal Rule 28, 28 U.S.C. § 2403 (1982). The purpose of the rule is to provide a representative of an appropriate governmental agency with notice that the constitutionality of a statute, ordinance or administrative regulation *affecting the public interest* is being called into question so that the representative may apply to intervene. The statute imposes no obligation on the representative to intervene, however, and a court is not precluded from proceeding if the representative fails to do so.

As an aside, we also note that MRHP has supplied this court with evidence that Supreme Court Rule 19 has been complied with. MRHP's reply brief contains copies of two letters: (1) a letter MRHP sent to the Attorney General, dated January 25, 1993, in which

MRHP notified the Attorney General of this matter, and (2) a letter from the Attorney General, dated February 25, 1993, in which the Attorney General declines to intervene in the action. Consequently, it is clear that the matter of MRHP's compliance with Rule 19 is a nonissue.

■ We now turn our attention to the appeal before us. As stated earlier, this is a permissive interlocutory appeal brought pursuant to Supreme Court Rule 308. As such, it is an exception to the general rule that appeal may be had only from final judgments. Consequently, the appeal must be strictly limited to the question certified by the trial court and this court should not expand upon the question to answer other issues that might have been included. *Jones v. City of Carbondale* (1991), 217 Ill. App. 3d 85, 576 N.E.2d 909; *State ex rel. Skinner v. Lombard Co.* (1982), 106 Ill. App. 3d 307, 436 N.E.2d 566; *Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110.

The question certified for our review is whether a 1988 amendment to section 26 of the VHSPA is violative of the equal protection and due process clauses of our State and Federal constitutions or whether it constitutes "special legislation," which is constitutionally prohibited. Because we find that the resolution of this question will not affect MRHP's interests in any way and, therefore, will not materially advance the litigation in this case, we dismiss the appeal. See *Getto*, 92 Ill. App. 3d at 1049, 416 N.E.2d at 1113 (principles of standing limit parties to contesting only those rulings which adversely affect their interest).

The Voluntary Health Services Plans Act (Ill. Rev. Stat. 1987, ch. 32, par. 595 *et seq.*) was originally enacted in 1951. At that time section 26 of the Act provided as follows:

> "A health services plan corporation *shall not be liable* for injuries resulting from negligence, misfeasance, nonfeasance, or malpractice on the part of any officer or employee of the corporation, or on the part of any person, organization, agency, or corporation rendering health services to the health services plan corporation's subscribers and beneficiaries." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 32, par. 620.

As held by *Brown v. Michael Reese Health Plan, Inc.* (1986), 150 Ill. App. 3d 959, 961, 502 N.E.2d 433, this provision of the statute did not insulate officers, doctors, employees, or any other person providing services via the health services plan; it only insulated the corporations organized under the Act and it did so for a very good reason.

At the time the Act came into being, health services plans organized pursuant to the Act were instituted by unions, which hoped

to improve the health and welfare benefits of their union members. (See, for example, Union Health Service, Inc., incorporated December 1, 1952, and Sidney Hillman Health Centre (Clothing and Textile Workers Union) incorporated November 24, 1953.) They were unique in that the plans did not merely indemnify its subscribers for health services, but contracted with health care providers to provide quality health care to their subscribers at reasonable rates. Courts held that this unique organizational structure and purpose warranted the special treatment given them by the legislature, without violating the equal protection clauses of the State and Federal constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. IV, § 2) or the State constitutional prohibition against special legislation (Ill. Const. 1970, art. IV, § 13). (See *Brown*, 150 Ill. App. 3d at 960-62.) Consequently, the immunity granted to VHSPA corporations was determined to be rationally related to a legitimate State purpose and section 26 of the Act, as originally enacted, was found to withstand constitutional muster. *American National Bank & Trust Co. v. Anchor Organization for Health Maintenance* (1991), 210 Ill. App. 3d 418, 424-26, 569 N.E.2d 128; *Brown*, 150 Ill. App. 3d at 962.

Subsequently, in 1974, more than 20 years after the VHSPA was enacted, the Illinois Health Maintenance Organization Act (HMO Act) came into law. (Ill. Rev. Stat. 1975, ch. 111$^{1}$/$_{2}$, par. 1401 *et seq.*) Originally, the HMO Act provided that any "person," including foreign corporations, wishing to operate a health care plan could apply and become certified as an HMO. However, HMOs were not identical to VHSPA corporations due to several differences in organizational structure and requirements, including the fact that HMOs need not be nonprofit.

In 1982, the HMO Act was amended to provide that only "organizations," such as insurance companies, nonprofit corporations authorized under various statutory provisions (including the VHSPA), or Illinois or foreign corporations organized for the purpose of operating one or more health care plans, could be certified as an HMO. (Ill. Rev. Stat. 1989, ch. 111$^{1}$/$_{2}$, pars. 1402(11), 1403(b).) Although these and other amendments to the HMO Act began to erode the differences between VHSPA corporations and HMOs, the statutory immunity granted VHSPA corporations was not altered.

Then, in 1988, the VHSPA was amended. Pursuant to the 1988 amendments, all health services plans organized under the Act were required to be certified HMOs (Ill. Rev. Stat. 1989, ch. 32, par. 602) and the statutory immunity previously enjoyed by all health services plans corporations organized under the Act was repealed, with one exception—those health services plans incorporated prior to 1962

and not owned or controlled by a hospital would still enjoy immunity. (Ill. Rev. Stat. 1989, ch. 32, par. 620.)[1] The HMO Act was also amended extensively, making HMOs subject to provisions of the Insurance Code (see *American National Bank & Trust Co.*, 210 Ill. App. 3d at 426) and, in 1989, the VHSPA was further amended to provide that no new charters could be issued under the Act after September 1989. Ill. Rev. Stat. 1989, ch. 32, par. 597.1.

Although the certified question asks us to consider the constitutionality of the legislation which repealed the grant of immunity for all but one VHSPA corporation, we believe that to answer this question we must simultaneously consider whether, in light of the above-stated facts, there is any constitutional basis for allowing the finite number of voluntary health services plans organized under the Act, all of which are concurrently certified HMOs, to enjoy statutory immunity from liability.

When reviewing this legislation as a whole, in conjunction with the comments made by the legislature when passing the 1988 amendment to the VHSPA, it is clear to this court that the legislature intended that no HMO, regardless of its organization pursuant to other statutes, be granted immunity. A single exception was made for Union, a health service plan which the legislature felt still conformed to the original concept of the VHSPA and, thereby, was entitled to continued immunity. In light of this, we must find that MRHP's basic premise is incorrect. MRHP's appeal is based upon the idea that a finding that the 1988 amendment to the VHSPA is unconstitutional would void the amendment and allow all VHSPA corporations to enjoy the immunity they previously enjoyed under the provisions of the original section 26 of the Act. However, this is not the case.

A grant of immunity is not a fundamental right; it is a legislatively created and statutorily conferred benefit bestowed upon a class, the constitutionality of which is dependent upon a finding that such benefit advances a legitimate State purpose. If the purpose ceases to

---

[1]Although it is unclear because the parties have not presented any conclusive documentation on the subject, it appears that at the time the 1988 amendments were passed there were only three HMOs in existence which were also organized under the VHSPA. These were Anchor Organization for Health Maintenance, Michael Reese Health Plan, and Union Health Services. As indicated by a dialogue during the June 30, 1988, Senate debate on the conference committee report pertaining to the statutory provision, the amendment was instituted to repeal the immunity for the two "hospital-controlled" health services plans, but keep intact the immunity for the one "service organization," *i.e.*, Union Health Service.

exist, the legislature is not only free to eliminate the gratuitously conferred benefit, it may be constitutionally mandated to do so. Otherwise the statute may be invalid as "special legislation."

With respect to the immunity provision of the VHSPA, it is clear that the legislature believed that there was no longer a need to confer the special benefit of immunity upon these health plans and, therefore, withdrew the benefit, which it is entirely entitled to do. However, the problem lies in the reservation of immunity for the single entity known as Union. Hence, if the 1988 amendment is constitutionally invalid at all, it is because of the exemption it creates. The question, then, is whether Union does, in fact, continue to adhere to the original concept of the VHSPA and whether there continues to be a legitimate State purpose for endowing Union with the benefit of immunity from liability.

MRHP's argument, that it is identical to Union in every respect, is misplaced. What MRHP fails to understand is that, whether Union and MRHP are identical in purpose and function will speak to the question of whether Union may continue to enjoy immunity, not to the question of whether MRHP's immunity should be reinstated. Therefore, the resolution of the certified question will not change MRHP's status or interest in the litigation and, for this reason, we do not feel it appropriate to answer the certified question at this time.

In addition, based upon the record before this court we are ill-equipped to determine whether Union Health Service continues to conform to the original concept of the VHSPA and, therefore, should be entitled to immunity. Therefore, for this reason also, we decline to answer the certified question at this time.

We note that MRHP argues that the nonprofit status of VHSPA corporations, alone, provides a rational basis for continuing to grant VHSPA corporations with immunity and, for this reason, the 1988 amendment should be revoked and immunity reinstated. However, it is not for this court to determine the appropriateness of conferring the benefit of immunity upon entities due to their nonprofit status, especially where the legislative intent to remove such a benefit has been made clear. Furthermore, we are unable to determine, on the record before us, whether any non-VHSPA HMOs exist with immunity from liability based solely upon their nonprofit status.

For the reasons stated above, we dismiss the permissive interlocutory appeal before us and remand for further proceedings consistent with this opinion.

Dismissed and remanded.

GORDON and McNULTY, JJ., concur.